**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/24/2024

---

NOSAJ ENTERTAINMENT, et al.,

                    Plaintiff,

        - against -

TRISTATE & BEYOND, LLC, et al.,

                    Defendants.

---

**22 Civ. 10110 (VM)**

<u>**DECISION AND ORDER**</u>

**VICTOR MARRERO, United States District Judge.**

Plaintiffs NOSAJ Entertainment ("Nosaj"), HP Entertainment ("HP"), Pinoy Dream Productions, LLC ("Pinoy Dream"), and Team Guidotts Production ("Team Guidotts") brought this action against Defendants Tristate and Beyond, LLC ("Tristate"), Romulo Aromin Jr. ("Aromin"), and Flordeliza Lantin ("Lantin," together with Aromin, the "Individual Defendants" and collectively with Tristate, "Defendants"). Plaintiffs seek a total of $472,000 in damages arising from Defendants' alleged cancellation of a concert series featuring Filipino artists Defendants organized with Plaintiffs. With respect to Tristate, Plaintiffs bring claims for breach of contract (Count One), unjust enrichment (Count Two), conversion (Count Three), and fraud (Count Four). With respect to Lantin, Plaintiffs bring claims asserting fraud (Count Four) and breach of fiduciary duty (Count Seven). With respect to Aromin, Plaintiffs bring claims alleging fraud

1

(Count Four), unjust enrichment (Count Five), and conversion (Count Six).

Now before the Court is Defendants' Motion for Summary Judgment (see Dkt. No. 60) on all of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). For the reasons stated herein, Defendants' motion is granted in part and denied in part.

## I.    **BACKGROUND**

### A.    FACTUAL BACKGROUND[1]

Tristate and Beyond, LLC is an event producer wholly owned by LLC members Lantin and Aromin. Tristate specializes in organizing events that showcase Filipino or Filipino-American performers. In June 2021, NOSAJ, HP, Pinoy Dream,

---

[1] The factual recitation is confined only to the facts in Defendants' Local Rule 56.1 Statement of Undisputed Material Facts (see Dkt. No. 63 [herein "Defendant's Rule 56.1 Statement" or "Def. SUMF"]), which is supported by affidavits and exhibits. Unless specifically quoted or otherwise cited as necessary, no other citation to the record will be made.

Plaintiffs have not filed a Rule 56.1 counterstatement. Instead, Plaintiffs include a statement of fact section in their Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (see Dkt. No. 64 [herein "Plaintiff's Opposition" or "Pl.'s Opp."]) but have not otherwise filed a "correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party." S.D.N.Y. Local Rule 56.1(a). If the party opposing summary judgment fails to "specifically convert[]" the moving party's statement of material facts by [e]ach numbered paragraph," then the moving party's facts "will be deemed admitted for purposes of the motion." Id.; See also T.Y. v. New York City. Dept. of Educ., 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."). The Court thus deems the properly supported facts set forth in Defendant's Rule 56.1 Statement as admitted. While the facts Defendants assert are deemed undisputed, this Court must still be satisfied that the evidence in the record supports those assertions. Vermont Teddy Bear Co., Inc. v. 1-800Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

and Team Guidotts (collectively, "Plaintiffs") reached out to Tristate to explore the idea of organizing a concert series in the United States featuring prominent Filipino performers (the "Concert Series"). On October 27, 2021, the parties entered into three separate Booking Agreements ("Booking Agreements") for each planned concert location of the series. (See Dkt. No. 63-2, [herein "Booking Agreements"].)

The Concert Series was titled "Mad About Love" and was set to showcase two prominent Filipino performers: Morisette Anon ("Anon") and Sam Concepcion ("Concepcion," and together with Anon, the "Performers").

Under the Booking Agreements, Tristate was responsible for booking the Performers by entering into contracts with their agents and for arranging travel to the United States for the Performers and their respective staffs. Tristate's responsibilities included working with United States Citizenship and Immigration Services ("U.S.C.I.S.") to acquire visas for the Performers. Meanwhile, Plaintiffs were responsible for securing the venue in the United States for the concert series as well as the accommodations and transportation for the Performers and their teams.

All three Booking Agreements contained substantially identical terms, with differences only in location and specific accommodations. Aromin signed each agreement on

behalf of Tristate while Lance Rayela — a representative from Team Guidott — signed on behalf of Plaintiffs. Under the terms of each agreement, Plaintiffs were to pay Tristate $34,000 for each performance, totaling $102,000, in accordance with the following payment schedule: (1) an initial non-refundable deposit ("Initial Deposit") of $11,900 within three days of executing the contract, (2) an additional payment of $11,900 within three days of the visas being issued, and (3) a final payment of $10,200 to be paid upon the Performers' arrival at the concert location. The concerts were to be held on January 14, 15, and 16, 2022, in Houston, Texas; Dallas, Texas; and Washington, D.C., respectively. (See generally Booking Agreements.)

The terms of the agreement outlined when Plaintiffs would be owed a refund of their deposits, along with additional expenses, if the Performers failed to appear for their scheduled concerts. Specifically, Section 4.1.3 of the Booking Agreements provided that if an artist failed to appear and perform for causes other than (1) force majeure or fortuitous events, and (2) denial of visa, Tristate was obligated to refund all deposits paid by Plaintiffs and to reimburse Plaintiffs for all expenses and losses they incurred in promoting and arranging the event. (See Booking Agreements at 8.) Conversely, Section 4.1.2 of the Booking

Agreements provided that if a concert was cancelled because of COVID-related events or a Performer failing to obtain a visa to travel to the United States, and the cause is not attributable to Tristate, the concert would be postponed to a mutually agreed upon date within one year from the original date. Tristate was obligated to apply any payments made by Plaintiffs to the rescheduled event. (<u>See</u> Booking Agreements at 7-8.) Similarly, the Agreement contained a force majeure provision which stated that if the concert series was postponed due to force majeure, "including a pandemic or COVID-related events," beyond the control of both parties, the event was to be rescheduled and Tristate was required to apply any payments made by Plaintiffs to the rescheduled event. (<u>See</u> <u>Id</u>.) Plaintiffs paid the three Initial Deposits of $11,900, totaling $35,700, on November 15, November 18, and November 22, 2021.

Several weeks after executing the Booking Agreements, Tristate entered into an agreement with the agent for the Performers, RankOne Productions, Inc. ("RankOne"), in which Tristate agreed to pay RankOne $38,500 for the booking of the Performers. (<u>See</u> Dkt. No. 63-7 [herein "RankOne Agreement"].)

In January 2022, representatives of Anon informed Tristate that he had contracted COVID-19 and provided a positive test. Under applicable regulations at the

time, if Anon traveled to the United States, he would be forced to quarantine in the United States for a ten-day period. As a result, Tristate informed Plaintiffs that the concert event would have to be postponed. On February 3, 2022, the parties entered into Amended/Rescheduled Booking Agreements (the "Amended Booking Agreements"), postponing the concert series to February and March 2022. (See Dkt. No. 8-4.)

Meanwhile, Tristate retained the Law Offices of Gabriel S. Dela Merced ("Dela Merced") for legal assistance in obtaining the necessary visas for the Performers. Tristate paid Dela Merced a total of $16,289 for its services. Tristate submitted applications and obtained approval for all individuals scheduled to travel to the United States for the concert series. (See Dkt. No. 63-5 [herein "Visa Application Approvals"].)

Before the visas could be issued, however, the Performers and their staff had to be interviewed at the United States Embassy in the Philippines (the "Embassy"). Because of the COVID-19 pandemic and the Omicron variant, the Embassy faced significant backlogs, delays in processing applications, and extended closures, which led to numerous interview appointment cancellations. On February 7, 2022, representatives of Tristate contacted Plaintiffs to discuss

Tristate's concerns that the Performers may not be able to obtain interviews to travel in time for the concert series. On February 15, 2022, Aromin contacted Jason Purino ("Purino"), the primary point of contact for plaintiffs, notifying him that the visas were not yet issued and inquired about rescheduling the concert series. On March 15, 2022, Aromin sent a letter to Purino requesting to reschedule the concert series but Purino refused. Instead, Purino demanded that Tristate refund them the $35,700 deposit.

    B.   <u>PROCEDURAL HISTORY</u>

Plaintiffs commenced this action on November 29, 2022. (<u>See</u> Dkt. No. 1 [herein "Compl."].) The parties exchanged pre-motion letters seeking to dismiss the complaint and the Court directed the parties to meet and confer on whether dispositive motion practice could be avoided. (<u>See</u> Dkt. No. 20.) After the parties met, counsel for Defendants submitted a letter notifying the Court that the parties could not reach a resolution and that Defendants would move for summary judgment in lieu of answering the Complaint. (<u>See</u> Dkt. No. 21.)

Shortly thereafter, the parties exchanged limited discovery, which is now concluded. (<u>See</u> Dkt. No. 47.) On November 17, 2023, Defendants moved under Federal Rule of Civil Procedure 56 ("Rule 56") for summary judgment in lieu

of filing an answer or responding to Plaintiffs' Complaint. (See Dkt. No. 59.) The motion asks the Court to dismiss the Complaint in its entirety. (See Dkt. No. 61 [herein "Def.'s Mem."].) Plaintiffs filed their Memorandum of Law in Opposition to Defendant's Motion ("Plaintiffs' Opposition") on December 14, 2023. (See Dkt. No. 64 [herein "Pl.'s Opp.".) Defendants filed their Reply Memorandum of Law ("Defendants' Reply") on January 12, 2024. (See Dkt. No. 66 [herein "Def.'s Reply"].)

## II.  **LEGAL STANDARD**

Rule 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (quoting Lucente v. County of Suffolk, 980 F.3d 284, 296 (2d Cir. 2020)). "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Id. at

166-67 (quoting Kaytor v. Elec. Boat. Corp., 609 F.3d 537, 545 (2d Cir. 2010)).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact." New York v. Mountain Tobacco Co., 942 F.3d 536, 541 (2d Cir. 2019) (quoting Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 166 (2d Cir. 2016)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 13 F.4th 247, 259 (2d Cir. 2021) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48 (1986).

Though a party opposing summary judgment "must provide more than conclusory allegations," Gorzynski v. JetBlue Airways, Corp., 596 F.3d 93, 101 (2d Cir. 2010), summary judgment is improper if any admissible evidence in the record allows a reasonable inference to be drawn in favor of the opposing party. See Kee, 12 F.4th at 158.

### III. <u>DISCUSSION</u>

A.    <u>BREACH OF CONTRACT</u>

To establish a breach of contract under New York law, a plaintiff must prove the following elements: (i) the existence of a contract; (ii) breach by the other party; and (iii) damages suffered as a result of the breach. <u>See</u> <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 348 (2d Cir. 1996). Summary judgment is appropriate "[w]here the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning." <u>Fulton Cogeneration Assocs. v. Niagara Mohawk Power Corp.</u>, 84 F.3d 91, 98 (2d Cir. 1996).

Plaintiffs claim that Defendants breached their contract by failing to secure the appearance of the Performers at the Concert Series and not refunding Plaintiffs their Initial Deposits. Defendants argue that summary judgment on the contract claim is appropriate because the evidence shows that their obligation to refund Plaintiffs' Initial Deposits was excused by Sections 4.1.1 and 4.1.2 of the Booking Agreements and that they complied with the contract by making efforts to reschedule the performances. (<u>See</u> Def.'s Mem. at 12-14.)

Section 4.1.1 of the Booking Agreements states the following:

> In case the event is cancelled or otherwise prevented for any cause *not attributable to [Tristate], or as a result of the Artist and Guest Artist not obtaining a US*

> *entry visa or being denied entry due to COVID* . . . [Plaintiffs], in consultation with [Tristate], shall be allowed to reschedule the event to another date within one (1) year from the original date of the event. Any amounts previously paid by [Plaintiffs] shall be applied to these rescheduled events.

(Booking Agreements at 7-8) (emphasis added.) Meanwhile, Section 4.1.2 of the Agreement contains a force majeure provision that states the following:

> In case of postponement due to force majeure or fortuitous events . . . *including a pandemic or COVID related events*, *beyond the control of both parties*, the event shall be reset to another date[.] Any amounts previously paid by [Plaintiffs] shall be applied to these rescheduled events.

(Id) (emphasis added.)

In their Opposition, Plaintiffs concede that the initial cancellation of the concert series due to Morisette contracting COVID-19 was "reasonable." (See Pl.'s Opp. at 13.) However, they argue that Defendants' failure to refund Plaintiffs after the subsequent cancellation due to the purported visa backlog constitutes a wrongful breach of the Booking Agreements. (See Id.) The Court construes Plaintiffs' concession to imply that their breach of contract claim stems only from the second cancellation due to the purported visa issue.

Plaintiffs argue that Defendants' failure to secure visa approvals for the Performers was not attributed to COVID-

11

19 backlogs, but because Defendants failed to submit necessary paperwork to the Embassy for the visa approvals. (See Pl.'s Opp. at 14.) Under this theory, if Defendants failed to complete the visa application, the cancellation would be due to their own inaction, not a visa denial. Consequently, Defendants would owe Plaintiffs a refund under Section 4.1.3 of the Booking Agreements/Amended Booking Agreements. (See Booking Agreements at 8.)

Specifically, Plaintiffs point out that Defendants have failed to submit evidence that they filed an Online Nonimmigrant Visa Application, Form DS-160 ("DS-160".) Before the Court addresses this allegation, a brief overview of the visa application process is required. "A citizen of a foreign country who wishes to work in the United States must first get the right visa." Temporary Worker Visas, Travel.State.Gov, U.S. Department of State – Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/us-visas/employment/temporary-worker-visas.html [herein "State Department Visa Application Process"][2]. The

---

[2] Pursuant to Federal Rule of Evidence 201(b), courts may take judicial notice of facts that are "not subject to dispute" because they are "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2), (d). The visa application process is readily determined from official governmental websites whose accuracy cannot reasonably be questioned. See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015); see also Perez v. Ahlstrom Corp., No. 10-cv-1299, 2011 WL 2533801, at *2, (D. Conn. June 27, 2011) (holding that

application process for a given visa depends on the temporary worker visa category the individual is applying under. Here, the record shows that Defendants petitioned for an "O-1B" and "O-2" visa for the Performers and their respective staffs. (See Dkt. No. 63-5 [herein "Visa Approvals"].) The "O" nonimmigrant category includes "applicants with extraordinary ability or achievement in the fields of science, art, education, business, or athletics." (See State Department Visa Application Process.) This category encompasses the "O-1B" visa petition, which is for individuals with extraordinary ability in the arts, and the "O-2" visa petition, which is for individuals who will accompany an "O-1B" artist. See O-1 Visa: Individuals with Extraordinary Ability or Achievement, U.S. Citizenship and Immigration Services, https://www.uscis.gov/working-in-the-united-states/temporary-workers/o-1-visa-individuals-with-extraordinary-ability-or-achievement (last updated Mar. 3, 2023).

---

the court "may also properly consider 'matters of which judicial notice may be taken,' . . . including information on an official government website."

The Court may properly consider the information from an official United States government website at the summary judgment stage because "any facts subject to judicial notice may be properly considered in a motion for summary judgment." Desclafani v. Pave-Mark Corp., No. 07-cv-4639, 2008 WL 3914881, at *5 n.7 (S.D.N.Y. Aug. 22, 2008) (citations omitted).

"Before an applicant can apply for a temporary worker visa, USCIS must first approve the "Petition for a Nonimmigrant Worker, Form I-129" ("I-129"). (See Visa Application Process.) Once the petition is approved, the applicant can apply for a temporary worker visa by completing and submitting a DS-160. (Id.) In sum, in order to secure the O-1B and O-2 visas, Defendants had to submit an I-129 petition and, once approved by U.S.C.I.S., submit a DS-160 to schedule an interview.

There is evidence in the record which suggests Defendants submitted an I-129 petition and got the petition approved by U.S.C.I.S. (See "Visa Approvals" at 2-11.) However, Defendants failed to meet their burden of showing no triable issue of fact as to whether they followed the next step and filed a DS-160 with the Embassy. Instead, Defendants merely assert that they hired an immigration attorney to obtain the visa approvals and were waiting for the visas to be issued by the Embassy. (See Def.'s Reply at 10.) Defendants do not provide any evidence that forecloses the issue of whether they submitted a DS-160 with the Embassy, nor do they expressly confirm submitting one in their reply brief.

Defendants point out that there is no evidence that affirmatively indicates that they failed to submit a DS-160. However, this Court "must view the evidence in light most

14

favorable to the party opposing summary judgment and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party." Gummo v. Vill. of Depew, N.Y., 75 F.3d 98, 107 (2d Cir. 1996). Here, Defendants' failure to provide any documentary proof that they submitted a DS-160, despite their insistence that they submitted a complete visa application, is conspicuous and supports a reasonable inference that they failed to complete this part of the application.

The lack of any documentary proof that Defendants submitted a complete visa application creates triable issues of fact as to whether Defendants performed under the contract. Accordingly, summary judgment is DENIED with respect to Plaintiffs' breach of contract claim (Count One) against Tristate.

### B. UNJUST ENRICHMENT CLAIM AGAINST TRISTATE AND AROMIN

Proving an unjust enrichment claim under New York law requires a plaintiff to establish "(1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006). "Unjust enrichment is a quasi-

contractual theory of recovery that exists in the absence of an affirmative agreement." Ford v. Rensselaer Polytechnic Inst., 507 F. Supp. 3d 406, 419 (N.D.N.Y. 2020) (citing Beth Israel Med. Ctr., 448 F.3d at 586). Under New York law, a claim for unjust enrichment cannot be made if the claim relates to a matter covered by a written contract. Sofi Classic S.A. de C.V. v. Hurowitz, 444 F. Supp. 2d 231, 249 (S.D.N.Y. 2006). If there is a valid written agreement "the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties," the doctrine of unjust enrichment does not apply. Clark-Fitzpatrick, Inc. v. Long Island R.R. Co, 516 N.E.2d 190, 193 (N.Y. 1987).

Plaintiffs' first unjust enrichment claim against Tristate clearly falls under this exception. That claim is based on Tristate's failure to refund Plaintiffs their Initial Deposit of $35,700 after the cancellation of the Concert Series. (See Compl. at ¶¶ 57-61.) The terms of the Booking Agreements and Amended Booking Agreements expressly covered when a refund of Plaintiffs' Initial Deposit was owed. As previously mentioned, Sections 4.1.1 and 4.1.2 of the Booking Agreements clearly provided that if the Concert Series is cancelled due to certain enumerated causes outside the control of Tristate, including the denial of a visa, any deposits made were to be applied to the rescheduled Concert

Series. (See Booking Agreements at 7-8.) Section 4.1.3 of the Booking Agreements further provided that if the Concert Series was cancelled for causes other than (1) force majeure events or (2) a denial of visa, Tristate must refund Plaintiffs all deposits made, and expenses incurred, in mounting and promoting the event. (Id.)

The parties do not dispute that the contract covers the refund at issue nor do the parties dispute the validity and enforceability of the contract. Plaintiffs state in their Opposition that a contract "exists between the Plaintiffs and the Defendants." (See Pl.'s Opp. at 13.) Plaintiffs appear to argue, however, that because they allege that Defendants never entered into a contract with RankOne, there is a dispute as to the existence of a contract that justifies permitting a quasi-contract claim. (See Opposition at 16.) The ancillary contract with RankOne is not relevant to this analysis. The key factor in dismissing the unjust enrichment claim is whether the contract Plaintiffs entered into with Defendants is (1) valid and enforceable and (2) covers the subject-matter of the unjust enrichment claim. See Ford v. Rensselaer Polytechnic Inst., 507 F. Supp. 3d 406, 419 (N.D.N.Y. 2020). There is no bona fide dispute that a valid contract between Plaintiffs and Tristate covers the topic of the $35,700 Initial Deposits Plaintiffs made.

The unjust enrichment claim against Aronin faces the same fate. That claim is based on Plaintiffs' directly paying Aromin the Initial Deposits that are the subject matter of their breach of contract action. (See Compl. ¶¶ 75-78.)

Accordingly, this Court GRANTS summary judgment for Defendants on Plaintiffs' Unjust Enrichment Claim (Count Two and Count Five.)


C.    CONVERSION CLAIMS AGAINST TRISTATE AND AROMIN.

"Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d. Cir. 1997) (quotations omitted). Even if a plaintiff meets all of the elements of a conversion claim, the claim will still be dismissed if it is duplicative of a breach of contract claim. AD Rendon Communications, Inc. v. Lumina Americas, Inc., No. 04-CV-8832, 2007 WL 2962591, at *4 (S.D.N.Y. Oct. 10, 2007). In determining whether a conversion claim is duplicative of a breach of contract claim, courts look to "the material facts upon which each claim is based and to the alleged injuries for which damages are sought." Id. at 5. If the claim for conversion does not allege wrongs and damages distinct from those predicated on a breach of

contract, it is duplicative and must be dismissed. Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011).

Plaintiffs' conversion claim is based on the failure of Tristate and Aromin to refund their Initial Deposits amount of $35,700. (See Compl. ¶¶ 62-64, 79-83; Pl.'s Opp. at 21.) Any duty to refund Plaintiffs the Initial Deposits was derived from the Booking Agreements and Amended Booking Agreements entered into by the parties. Plaintiffs note that conduct which constitutes a breach of contract may also constitute the breach of a duty independent of the contract itself. (See Compl. ¶¶ 62-64; Opposition at 15.) However, the Court does not find any evidence in the record establishing an independent duty of Defendants to refund Plaintiffs outside of the contractual obligations. Plaintiffs cite two cases in support of finding a separate duty, but those cases are inapposite and stand only for the proposition that a corporate officer may be held personally responsible for the commission of a tort when acting on behalf of their corporate principal. See Merill Lynch, Pierce, Fenner & Smith Inc. v. Arcturus Builders, Inc, 552 N.Y.S.2d 287 (Sup. Ct. App. Div. 1990); Espinosa v. Rand, 806 N.Y.S.2d 186 (Sup. Ct. App. Div. 2005) (which does not even discuss a claim for conversion or breach of contract).

The relevant question the Court is faced with here is not whether Aromin can be held individually liable for conversion but whether the record shows an independent, actionable wrong outside of the contract to which Aromin is a signatory. Here, Plaintiffs are seeking enforcement of the Booking Agreements and Amended Booking Agreements because their claims derive from Defendant's contractual duty to refund Plaintiffs in the event the Concert Series were cancelled for causes attributable to Defendants. Moreover, "both the conversion and breach of contract claims seek redress for virtually the same damages": the $35,700 Initial Deposits. AD Rendon Communications, Inc., 2007 WL 2962591, at *4.

Accordingly, this Court GRANTS summary judgment for Defendants on Plaintiffs' Conversion Claim (Count Three and Count Six.)

### D.    FRAUD CLAIMS

In their Complaint, Plaintiffs allege that Defendants committed fraud by (1) falsely promising to perform on its contractual obligations and (2) falsely promising that they entered into the RankOne Agreement. (See Compl. ¶¶ 65-69.)

Under New York law, where a fraud claim is stated in conjunction with a breach of contract claim, "a plaintiff

must either: (i) 'demonstrate a legal duty separate from the duty to perform under the contract'; (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract'; or (iii) 'seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.' Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc., 837 F. Supp. 2d 162, 198 (S.D.N.Y. 2011) (citing Bridgestone/Firestone, Inc., 98 F.3d 13, 20 (2d Cir. 1996)).

Plaintiffs' fraud claim related to Defendants' promises to perform its contractual obligations is premised on Tristate's alleged breach of contractual duties and is dismissed as duplicative of the breach of contract claim.[3] In addition, Plaintiffs' claim that Defendants misrepresented having entered into the RankOne Agreement is insufficient to support a claim for fraud under New York Law. A misrepresentation that is merely a promise to perform under a contract cannot constitute fraud. See Wild Bunch, SA v. Vendian Entertainment, LLC, 256 F. Supp. 3d 497, 502 (S.D.N.Y. 2017); See Manning v. Utils. Mut. Ins. Co., Inc., 254 F.3d

---

[3] To the extent Plaintiffs' fraud claims are based on representations made by Lantin, a non-party to the contract, those claims are also duplicative of the breach of contract claims. The evidence shows that the representations Lantin made were related to Tristate's ability to secure the visas for the Performers. These statements amount to mere representations that Tristate will perform under the contract. See Exch. Listing, LLC v. Inspira Techs., Ltd., 661 F. Supp. 3d 134, 158 (S.D.N.Y. 2023) ("[C]ourts have found fraud claims to be duplicative, even as against the non-party.").

387, 401 (2d Cir. 2001) (concluding that a representation that "is merely a statement of intent to perform under the contract cannot constitute fraud"); Bridgestone/Firestone Inc., 98 F.3d at 19-20 (dismissing a fraud claim where the alleged misrepresentations "amount[ed] to little more than intentionally false statements . . . indicating [defendant's] intent to perform under the contract.").

Moreover, Plaintiffs do not allege any damages that would not be recoverable under their breach of contract cause of action; they seek to recover the Initial Deposits made to Tristate and incidental expenses incurred in promoting the Concert Series. These are all damages that are otherwise recoverable in Plaintiffs' breach of contract action. See Manas v. VMS Assocs., LLC, 863 N.Y.S.2d 4, 7-8 (N.Y. App. Div. 2008) (dismissing plaintiff's fraud claims because her requested relief of salary and bonuses were also recoverable in her breach of contract cause of action.) Plaintiffs are otherwise not owed punitive damages, which may only be recovered for fraud that is "founded upon such moral indifference as to be aggravated by evil or to be demonstrative of a criminal indifference to civil obligations." Koch v. Greenberg, 14 F. Supp. 3d 247, 273 (S.D.N.Y. 2014). There is no admissible evidence in the record establishing such circumstances.

Therefore, Plaintiffs' claims for fraud must be dismissed as duplicative of the breach of contract claim. Accordingly, summary judgment for Defendants Tristate, Lantin, and Aromin as to Plaintiffs' claim for fraud and misrepresentation (Count Four) is GRANTED.

E.   BREACH OF FIDUCIARY DUTY

Plaintiffs' complaint includes a claim for breach of fiduciary duty against Lantin, alleging that because Purino was friends with Lantin, Lantin has a fiduciary duty to "tell the truth to [Purino] that they have no existing contractual relationship" with the Performers' agents. (See Compl. ¶¶ 85-86.) The relationship Plaintiffs describe does not create a fiduciary. See Benzies v. Take-Two Interactive Software, Inc., 159 A.D.3d 629, 631 (N.Y. App. Div. 2018) (holding that the existence of a close friendship is not sufficient to establish the necessary requirement of trust and confidence for a viable claim for breach of fiduciary duty to proceed). Accordingly, summary judgment on Plaintiffs' claim for breach of fiduciary duty is **GRANTED** for Defendant Lantin.

## IV.   ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the motion for summary judgment (Dkt. No. 60) of Defendants Tristate and Beyond, LLC, Romulo Aromin,

Jr., and Flordeliza Lantin is DENIED, in part, and GRANTED, in part. Specifically, the motion for summary judgment on Count One is **DENIED**, and the motion is **GRANTED** in all other respects.

The Clerk of the Court is directed to terminate the motion for summary judgment entered at Docket No. 60.

**SO ORDERED.**

Dated:    24 September 2024
          New York, New York

_____
                    Victor Marrero
                    U.S.D.J.