USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/16/2025

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NOSAJ ENTERTAINMENT, HP ENTERTAINMENT, PINOY DREAM PROD., LLC, TEAM GUIDOTT'S PRODUCTION

                Plaintiffs,

- against -

TRISTATE AND BEYOND, LLC,

                Defendant.

22 Civ. 10110 (VM)

**DECICISON AND ORDER**

---

**VICTOR MARRERO, United States District Judge.**

Plaintiffs NOSAJ Entertainment, HP Entertainment, Pinoy Dream Productions, LLC, and TEAM Guidotts Production, (collectively, "Plaintiffs") brought this action against defendants Tristate and Beyond, LLC ("Tristate"), Romulo Aromin Jr. ("Aromin"), and Flordeliza Lantin ("Lantin," together with Aromin, the "Individual Defendants" and collectively with Tristate, "Defendants").

On September 24, 2024, this Court issued an order granting summary judgment on all claims against the Individual Defendants, but denied summary judgment on Plaintiffs' breach of contract claim against Tristate. see NOSAJ Entertainment v. Tristate & Beyond, LLC, 22 Civ. 10110, 2024 WL 4276243 (S.D.N.Y. Sept. 24, 2024). Tristate now moves for reconsideration of the Court's denial of summary judgment on the breach of contract claim. (See Dkt. No. 84.) For the

reasons outlined below, the motion for reconsideration is **GRANTED** and Tristate's motion for summary judgment is **GRANTED** on reconsideration.

## I. BACKGROUND

A detailed recitation of the facts of this case is provided in this Court's decision and order dated September 24, 2024, see NOSAJ Entertainment 2024 WL 4276243, at *2-3. Accordingly, the Court incorporates the facts in that decision and order and provides only a brief recitation of the facts germane to the instant motion.

The parties entered into several agreements (the "Booking Agreements") under which Tristate was responsible for booking two prominent Filipino singers (the "Performers") by arranging their travel to the United States for scheduled concerts (the "Concert Series"). See NOSAJ Entertainment, 2024 WL 4276243, at *2. Tristate's responsibilities under the Booking Agreements included working with United States Citizenship and Immigration Services ("U.S.C.I.S.") to secure visas for the Performers, while Plaintiffs were responsible for securing the concert venues in the United States. (See id.) If the Performers failed to appear for the Concert Series, Tristate would refund the Plaintiffs' initial deposit, unless the failure was due to force majeure, in which case the Concert Series would be postponed, and the initial

2

deposit would be applied to the rescheduled event. (See id. at *4-5.) After Tristate's second attempt to reschedule the Concert Series due to failure to obtain visas for the Performers, Plaintiffs sued for breach of contract to recover the initial deposit. (See id. at *3.) Tristate invoked the force majeure clause in the Booking Agreements, arguing that it could not secure visa interviews for the Performers due to the COVID-19 Omnicron variant, which caused the United States Embassy in the Philippines (the "Embassy") to close, causing a backlog of visa interviews.  (See Dkt. No. 61 at 8.)

On September 24, 2024, this Court granted in part and denied in part Defendants' motion for summary judgment on all of Plaintiffs' claims in this action. See generally NOSAJ Entertainment, 2024 WL 4276243. The Court granted summary judgment in favor of the Individual Defendants on Plaintiffs' claims for unjust enrichment, conversion, fraud, and breach of fiduciary duty. See id. at *6-9. The Court denied summary judgment on Plaintiffs' breach of contract claim against Tristate on the basis that there was a triable issue of fact as to whether Tristate took all reasonable steps to obtain visas for the Performers. See id. at *5-6. Specifically, the Court found that Tristate failed to show a lack of a genuine dispute of material fact as to whether Tristate had submitted

a Form DS-160 ("DS-160") – a required form to obtain visas for the Performers - with the Embassy. See id.

On January 21, 2025, Tristate submitted a letter pursuant to this Court's Individual Practices Rule II(A) requesting a conference regarding its proposed motion for reconsideration, claiming that it now has documentary proof that Tristate had submitted a DS-160 with the Embassy. (See Dkt. No. 76.) The Court denied the motion for a conference but ordered briefing on the motion for reconsideration. (See Dkt. No. 80.) Tristate filed the instant motion for reconsideration on February 28, 2025. (See Dkt. No. 84.) Plaintiffs filed their joint opposition on March 21, 2025, (see Dkt. No. 89), and Tristate filed a reply on April 4, 2025. (See Dkt. No. 91.)[1]

## II. MOTION FOR RECONSIDERATION

A. Legal Standard

The standard governing motions for reconsideration under Local Rule 6.3 is the same as that governing motions under Federal Rule of Civil Procedure 59 ("Rule 59"). Schoolcraft v. City of New York, 298 F.R.D. 134, 136 (S.D.N.Y. 2014). A district court has broad discretion to grant reconsideration

---

[1] On April 9, 2025, Plaintiffs submitted a letter addressing the substantive arguments in Tristate's reply brief. (See Dkt. No. 93.) This letter constitutes an unauthorized sur-reply and is hereby stricken by the Court. See Diallo v. New York City, No. 23-CV-1238, 2025 WL 522514, at *7 (S.D.N.Y Feb. 18, 2025).

4

where the moving party demonstrates "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Henderson v. Metro. Bank & Trust Co., 502 F. Supp. 2d 372, 375-76 (S.D.N.Y. 2007) (quotation marks and citations omitted); Parrish v. Sollecito, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003) ("Reconsideration may be granted to correct clear error, prevent manifest injustice or review the court's decision in light of the availability of new evidence.").

Reconsideration of a court's prior order under both Local Rule 6.3 and Rule 59 "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." Ferring B.V. v. Allergan, Inc., No. 12 Civ. 2650, 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013) (quoting Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012)). Accordingly, the standard for granting a motion for reconsideration is strict and the court's review "is narrow and applies only to already-considered issues; new arguments and issues are not to be considered." Morales v. Quintiles Transnat'l Corp., 25 F. Supp. 2d 369, 372 (S.D.N.Y. 1998).

B. Discussion

Although the standard for reconsideration is strict, the Court finds that Tristate has provided newly discovered

5

evidence that warrants granting its motion for reconsideration.

To prevail on a motion for reconsideration on the grounds of newly discovered evidence, the movant must establish that:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

Metzler Investment Gmbh v. Mexican Grill, Inc., 970 F.3d 133, 147 (2d Cir. 2020) (quoting United States v. Int'l Bhd. Of Teamsters, 247 F.3d. 370, 392 (2d Cir. 2001)).

In the September 24, 2024 Summary Judgment Decision and Order, the Court concluded that there was a dispute of material fact as to whether Tristate had completed the necessary steps to secure the Performers' visas. See NOSAJ Entertainment, 2024 WL 4276243, at *6. Although the record supported that Defendants had completed the first step of the visa application by submitting a Petition for a Nonimmigrant Worker, Form I-129 ("I-129"), the Court found that there was no evidence in support of Defendants' claim that they completed the second step of the visa application by submitting a DS-160. See id. Based on the lack of any documentary proof that Defendants had submitted a complete visa application, which was material to whether Defendants

6

had performed under the contract, the Court denied summary judgment on the breach of contract claim. See id.

Tristate now submits evidence that it filed the DS-160 application, which includes copies of the United States Department of State's confirmation of Tristate's submissions of the DS-160 for the Performers, (see Dkt. No. 86-2), along with receipts confirming payment of the visa processing fee. (See Dkt. Nos. 91-1, 91-2, 91-3, 91-4, 91-5.)

A party moving for reconsideration based on newly discovered evidence must have been "justifiably ignorant" of such evidence despite due diligence. Metzler Investment Gmbh, 970 F.3d at 147. In addition, Local Rule 6.3 provides that a motion for reconsideration must be noticed within 14 days after the entry of the court's challenged order. Local Civ. R. 6.3. Tristate first noticed its motion on January 21, 2025; four months after the Court's denial of their motion for summary judgment. (See Dkt. No. 76.) Moreover, Tristate has not made any suggestion that they were "justifiably ignorant" of the DS-160 forms despite due diligence. Instead, Tristate claims it did not have the DS-160 Form at the time its summary judgment motion was filed because Plaintiffs' breach of contract claim in its Complaint contained no allegations related to steps taken in the visa application process. (See Dkt. No. 91 at 6.) The visa process only became a material

7

issue after Plaintiffs filed their opposition to Tristate's motion. (See id.) Tristate's explanation does not justify the four-month delay in bringing this motion or does it adequately show that Tristate was "justifiably ignorant" of the DS-160 despite due diligence. Regardless, this Court has broad discretion to decide whether to grant reconsideration, particularly in light of the "strong interests of judicial efficiency, finality, and scarce judicial resources." Jackson v. Goord, 664 F. Supp. 2d 307, 314 (S.D.N.Y. 2009). The Court finds that Tristate's newly submitted evidence is admissible and of such import that it would have likely changed the outcome of the Court's disposition of Tristate's initial motion for summary judgment. Tristate's motion for reconsideration is therefore granted and the Court will reconsider the motion for summary judgment with the benefit of the newly submitted evidence.

### III. MOTION FOR SUMMARY JUDGMENT

A. Legal Standard

Federal Rule of Civil Procedure 56 ("Rule 56") provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under Rule 56, the Court "must construe the facts in the light most favorable to the non-

8

moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Kee v. City of New York, 12 F.4th 150, 158 (2d Cir. 2021) (quoting Lucente v. County of Suffolk, 980 F.3d 284, 296 (2d Cir. 2020)).

"The moving party bears the burden to demonstrate the absence of any genuine issues of material fact." New York v. Mountain Tobacco Co., 942 F.3d 536, 541 (2d Cir. 2019) (quoting Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 166 (2d Cir. 2016)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 13 F.4th 247, 259 (2d Cir. 2021) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

Though a party opposing summary judgment "must provide more than conclusory allegations," Gorzynski v. JetBlue Airways, Corp., 596 F.3d 93, 101 (2d Cir. 2010), summary judgment is improper if any admissible evidence in the record allows a reasonable inference to be drawn in favor of the opposing party. See Kee, 12 F.4th at 158.

A. Discussion

To make out a claim for breach of contract, Plaintiffs must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages." Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). Plaintiffs must also "identify what provisions of the contract were breached as a result of the acts at issue." Chefs Diet Acquisition Corp. v. Lean Chefs, LLC, No. 14 Civ. 8467, 2016 WL 5416498, at *8 (S.D.N.Y. Sept. 28, 2016). A court may grant summary judgment on a breach of contract claim only "when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning." Topps Co. v. Cadbury Stani S.A.I.C., 526 F.3d 63, 68 (2d Cir. 2008). Ambiguity is defined in terms of "whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way." Id. If the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguity can be resolved either by extrinsic evidence which permits interpretation of the agreement as a matter of law or if the non-moving party "fails to point to any extrinsic evidence supporting that party's interpretation of the language." Campagnie Financiere de CIC et de L'Union

Europeene v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 232 F.3d 153, 158 (2d Cir. 2000).

Plaintiffs argue that Defendants breached their contract by failing to secure the appearance of the Performers at the Concert Series and not refunding Plaintiffs their initial deposits. Defendants argue that summary judgment on the breach of contract claim is appropriate because the evidence shows that their obligation to refund Plaintiffs' Initial Deposits was excused by Sections 4.1.1 and 4.1.2 of the Booking Agreements, which excuse performance due to force majeure, such as COVID-19.

A "force majeure event is an event beyond the control of the parties which prevents performance under a contract and may excuse non-performance." See Kel Kim Corp. v. Cent. Mkts., Inc., 519 N.E.2d 295, 296 (N.Y. 1987). New York law requires courts to construe force majeure clauses narrowly, so that "only if the *force majeure* clause specifically includes the event that actually prevents a party's performance will that party be excused." Kel Kim Corp., 519 N.E.2d at 296-97. As the party invoking the doctrine, Tristate carries the burden to establish force majeure. See Phillips Puerto Rico Core, Inc. v. Tradax Petroleum, Ltd., 782 F.2d 314, 319 (2d Cir. 1985).

First, it is undisputed that the force majeure clause specifically includes COVID-19 as an event that may excuse a party's performance. See Kel Kim Corp., 519 N.E.2d at 296-97. The Booking Agreements provide that in the event the Concert Series is postponed due to a force majeure, including a "COVID-related event," the parties may reschedule to a later date. (See Booking Agreements at 7-8.) The force majeure provision is unambiguous and clearly applies to the Embassy's closure and subsequent interview backlog due to COVID-19 Omicron variant. See JN Contemporary Art LLC v. Phillips Auctioneers LLC, 29 F.4th 118, 124 (2d Cir. 2022) (finding that the COVID-19 pandemic constitutes an event that "cause[s] large-scale societal disruptions" that are "beyond the parties' control and are not due to the parties' fault or negligence")

Tristate has met its burden in showing no dispute of material fact as to whether the force majeure occurred. Indeed, Tristate provided a sworn declaration by one of its members attesting to the fact that the Embassy was closed for extended periods of time due to the Omnicron variant, resulting in the cancellation of interviews, and an additional declaration by Tristate's immigration attorney attesting to the same. (See Dkt. No. 63 ¶ 25; Dkt. No. 86 ¶ 11.) Plaintiffs submit no evidence to contradict that the

12

Embassy was closed for extended periods of time due to the Omicron variant, which resulted in the interview backlog.

Instead, Plaintiffs argue that Tristate's non-performance cannot be excused under the force majeure clause because (1) Tristate failed to pay the $205 visa processing fee, (2) Tristate failed to apply for the Embassy's interview waiver program, (3) that one of the Performers was able to secure a visa three months after the scheduled Concert Series (See Dkt. No. 89 at 5.) Essentially, Plaintiffs maintain that Tristate's failure to secure the Performers' visas was due to negligence, not COVID-19, and was within their control.

Plaintiffs' argument that Tristate failed to pay the visa processing fee is contradicted by evidence in the record because Tristate has submitted copies of receipts reflecting payments to the Embassy for the DS-160 application. (See Dkt. Nos. 90-1, 90-2, 90-3, 90-4, 90-5.)

Plaintiffs' argument that Tristate should have taken advantage of the Embassy's interview waivers is similarly unavailing. Based on Plaintiffs' submission, the interview waiver program that was expanded in December 2021 applies only to B1/B2, F, M, and J nonimmigration visas, (see Dkt. No. 89-3 at 2.), not "O-1B" and "O-2" visas, which are at issue here. (See Dkt. No. 63-5.) See Temporary Worker Visas, U.S. Department of State Bureau of Consular Affairs, https:

13

[//travel.state.gov/content/travel/en/us-visas/employment/temporary-worker-visas.html](//travel.state.gov/content/travel/en/us-visas/employment/temporary-worker-visas.html) (O-visa is available for "applicants with extraordinary ability or achievement in the fields of science, art, education, business or athletics"). Thus, Plaintiffs' evidence reinforces that the Performers, who sought O-visas, were not eligible for the interview waiver program.[2] Plaintiffs' exhibit includes an update from the Embassy dated January 12, 2023, providing that the U.S. Department of State would extend the waiver of in-person interviews for O visa-applicants who meet certain conditions to December 2023. (See Dkt. Nos. 65-6 at 3; 89-2 at 3.) This notice was published months after Tristate applied for its visas and does not otherwise demonstrate that Tristate could have taken advantage of the interview waiver program in 2021 or 2022 when it was attempting to perform under the Booking Agreements.

Finally, that one of the Performers was able to secure a visa three months later for a separate concert does not imply that Tristate failed to complete all necessary steps to secure a visa for the Performers. Tristate has provided

---

[2] Nor do Plaintiffs allege that Tristate should have applied for B1/B2, F, M, or J-visas, which are for visitors who want to enter the United States for business, tourism, course of study, or an approved exchange visitor program, respectively. See Director of Visa Categories, U.S. Department of State – Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/all-visa-categories.html.

14

evidence showing that it followed the proper procedures to apply for the applicable visas. Tristate submitted an I-129 petition with the U.S.C.I.S. and submitted the required DS-160 to schedule a visa interview at the Embassy. (See Dkt. Nos. 63-5, 86-1, 86-2.) Moreover, Tristate's immigration attorney submitted a letter to the Embassy requesting interviews on an expedited basis, reinforcing that Tristate took all reasonable steps to fulfill its obligations under the Booking Agreements. (See Dkt. No. 65-7.)

After considering the new evidence submitted by Tristate, the Court finds no record evidence supporting a finding that Tristate was negligent in applying for the visas of the Performers. Accordingly, the Court grants Tristate's motion for summary judgment on Plaintiffs' breach of contract claim.

## IV.   ORDER

For the reasons stated above, it is hereby

**ORDERED** that the motion (Dkt. No. 84) of defendant Tristate and Beyond, LLC ("Tristate") for reconsideration of the Court's September 24, 2024 Decision and Order (Dkt. No. 68) is **GRANTED**; and it is further

**ORDERED** that the motion of Tristate for summary judgment (Dkt. No. 60) is **GRANTED** on reconsideration.

The Clerk of Court is respectfully directed to terminate all pending motions and to close this case.

**SO ORDERED.**

Dated:   16 April 2025
         New York, New York

_____
Victor Marrero
U.S.D.J.